# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

JAMES R. JARVIS, AMELIA E. JARVIS,     )
ANDRE D. MONTGOMERY, BONITA     )
MONTGOMERY, ALLARD J. NAYADLEY     )
and JANET L. NAYADLEY     )
    )      Case No. 1:17-cv-00172
v.     )
    )      Mag. Judge Christopher H. Steger
HAMILTON COUNTY DEPARTMENT OF     )
EDUCATION, TENNESSEE DEPARTMENT     )
OF CHILDREN'S SERVICES, HAMILTON     )
COUNTY, TENNESSEE, HAMILTON     )
COUNTY DISTRICT ATTORNEY'S OFFICE,     )
MARSHALL N. PINKSTON and FRED R.     )
SMITH, JR.     )

## MEMORANDUM OPINION

### I. Introduction

On December 22, 2015, during a multi-day, school-sponsored trip to a basketball tournament, upper-level students on the Ooltewah High School basketball team assaulted freshman members of the team with a pool cue[1] in an incident that drew local outrage and national attention. Plaintiffs Andre Montgomery, Allard Nayadley, and James Jarvis were, at that time, the basketball coach, Athletic Director, and Principal, respectively, at Ooltewah High School. These Plaintiffs filed the present lawsuit alleging that Defendants took illegal actions against them in the aftermath of the assault.

Defendants in this lawsuit are comprised of the Tennessee Department of Children's Services ("TDCS"); the Hamilton County District Attorney General's Office ("HCDAGO"); the Hamilton County Department of Education ("HCDE"); HCDE's former Superintendent, Fred

---

[1] [*See* Amended Complaint, Ex. 11 at p. 3, Doc. 128-12].

Smith; and Hamilton County District Attorney General Marshall N. Pinkston ("Pinkston").[2] Each Defendant has filed a motion to dismiss this action for lack of subject matter jurisdiction and/or failure to state a claim upon which relief can be granted.

For the reasons set forth below, the Court will **DISMISS WITH PREJUDICE** all federal causes of action and will **DISMISS WITHOUT PREJUDICE** all state law causes of action. The Court will enter an appropriate order and judgment in Defendants' favor.

## II. Background

### A. Procedural History

Plaintiffs filed this action on June 19, 2017. Subsequently, Defendants each moved to dismiss the lawsuit. In response to the motions to dismiss, Plaintiffs moved to amend their 30-page complaint. After reviewing the complaint and the proposed amended complaint (which had grown to 34 pages), the Court denied the motion to amend because the proposed amended complaint was organized in a manner that made it extremely difficult for the Court to determine whether it complied with the requirement set forth in Fed. R. Civ. P. 8 to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." [Feb. 23, 2018 Order, Doc. 125]. The Court did, however, give Plaintiffs leave to file another amended complaint. In doing so, the Court provided specific instructions regarding the structure and organization Plaintiffs should utilize to clarify: (1) which Plaintiffs were bringing which claims against which Defendants; and (2) the facts relied upon by Plaintiffs to support each specific claim. [*Id.*]. The Court instructed Plaintiffs that leave to amend "is not a license to extend the Amended Complaint beyond the claims and

---

[2] Pinkston is named in the caption of the Amended Complaint as Marshall N. Pinkston. He is also referenced in the body of the Amended Complaint in multiple ways. For example, Pinkston is referred to as "Neal Pinkston," [Amended Complaint ¶¶ 183 and 185, Doc. 128]; "the District Attorney General of Hamilton County," [*id*. ¶ 11]; "the Hamilton County District Attorney General," [*id*. ¶ 11]; and the "Hamilton County District Attorney" [*id*. ¶ 63]. The Court recognizes that these names refer to the same person. The Court will refer to this Defendant as "Pinkston" or "Hamilton County District Attorney General Pinkston."

facts alleged in the proposed amended complaint. It is simply an opportunity for Plaintiffs to organize and clarify their claims so that the Court can better determine what claims are properly before the Court." [*Id*. at 3]. The Court then denied the pending motions to dismiss without prejudice. [*Id*.]. In response, Plaintiffs filed the current 73-page Second Amended Complaint with fourteen exhibits (for purposes of brevity, this pleading will be referred to hereinafter as "Amended Complaint") [Doc. 128]. Defendants responded with their respective motions to dismiss. The Court will separately address each motion to dismiss.

**B.       The Amended Complaint**

The fact section of the Amended Complaint consists of 29 pages and 186 paragraphs. Not all of the factual allegations are relevant to each claim—neither are they relevant to each Defendant. While the Court makes no finding as to the truth of the allegations in the Amended Complaint, it will—solely for purposes of addressing the motion to dismiss—accept as true all well pleaded allegations. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). A synopsis of the facts alleged by Plaintiffs is set forth below.

- Ooltewah High School is located in Hamilton County, Tennessee. [Amended Complaint ¶ 4]. Plaintiff Andre Montgomery (African-American) was the basketball coach at Ooltewah High School. [*Id*. ¶ 5 ]. Plaintiff Allard Nayadley (Caucasian) was the Assistant Principal and Athletic Director. [*Id*. ¶ 4 ]. Plaintiff James Jarvis (Caucasian) was the principal. [*Id*. ¶ 4].

- On the evening of December 22, 2015, the Ooltewah High School basketball team was staying in a cabin in Gatlinburg—located in Sevier County, Tennessee—where the team was participating in a five-day basketball tournament. [*Id*. ¶¶ 12, 24].

- After dinner, while Coach Montgomery was washing dishes, three players assaulted a fourth player in another part of the cabin. [*Id*. ¶¶ 25-26].

- Coach Montgomery transported the injured player to the hospital. [*Id*. ¶ 27]. Upon arrival at the hospital, Montgomery was unsuccessful in his attempt to reach the injured player's mother, but he was able to notify the injured player's grandmother of the assault. [*Id*. ¶ 28]. In addition, "[l]aw enforcement authorities were notified of the assault" [*Id*. ¶ 29]; Montgomery's "designee" contacted the parents of all of

the players; Montgomery "reported to HCDE designated officials all facts as he knew them" [*Id.* ¶¶ 30-31, 36]; and "[t]he injured player was diagnosed with simple pain and sent back to the cabin." [*Id.* ¶ 33].

- Law enforcement arrived at the cabin and began an investigation. [*Id.* ¶ 32]. Coach Montgomery and the investigating law enforcement officer decided the injured player needed a trauma center. An ambulance transported him to the trauma center in Knoxville, Tennessee, where the injured player remained for five days. [*Id.* ¶¶ 37-39].

- The Gatlinburg Police Department investigated the assault and concluded that Montgomery, Nayadley, and Jarvis had not committed any crime. [*Id.* ¶ 45]. The Sevier County District Attorney General's Office charged one player with rape and sexual assault. [*Id.* ¶ 53].

- On January 14, 2016, Hamilton County District Attorney General Pinkston issued a Juvenile Court summons to Montgomery and Nayadley for failing to report child abuse in violation of state law. [*Id.* ¶ 63]. Pinkston violated Montgomery's and Nayadley's due process rights by insisting on a preliminary hearing in Juvenile Court when the statute under which they were charged did not provide for one. [*Id.* ¶ 64]. Pinkston signed a complaint in Hamilton County Juvenile Court initiating prosecution of Montgomery and Nayadley for failure to report child abuse or child sexual abuse in violation of state law. [*Id.* ¶ 65].

- The media issued inaccurate reports about what had happened, and none of the Defendants attempted to correct those reports. [*Id.* ¶¶ 46-51]. "[O]n January 15, 2016, Pinkston spoke to News Channel 9 and stated '[a]ny time kids can't go to school or enjoy themselves without fear of violence, it is not a good thing. It's troubling.'" [*Id.* ¶ 55]. Pinkston gave false information to a reporter that four players were sexually assaulted. An article repeating this information was published in the "Times Free Press" newspaper on January 21, 2016. [*Id.* ¶ 51].

- Based on the definition of child abuse and child sexual abuse under Tennessee law, neither Montgomery nor Nayadley was required to report the incident as child abuse or child sexual abuse, and, therefore, probable cause was lacking to charge them with the crime of failure to report the same in violation of Tennessee law. [*Id.* ¶¶ 73-74, 77-78].

- At the preliminary hearing in Juvenile Court, a Tennessee Department of Children's Services (TDCS) representative testified that, pursuant to TDCS Administrative Policies and Procedures 14.1, Montgomery and Nayadley had no duty under Tennessee law to report the December 22, 2015, assault as child abuse or child sexual abuse because the incident did not qualify as such under Tennessee law. [*Id.* ¶¶ 66-71].

- The "Sevierville [sic] County District Attorney General's Office refused to prosecute Montgomery or Nayadley because they had committed no wrongdoing." [*Id*. ¶ 75].

- Nevertheless, on February 15, 2016, "Pinkston brought criminal indictments [in the Hamilton County, Tennessee Criminal Court for failure to report child sexual abuse] which were grossly unreasonable" because Montgomery and Nayadley were not required under Tennessee law to report the December 22, 2015, assault as child sexual abuse. [*Id*. ¶¶ 76-78, 88; *see also* Ex. 10 to Amended Complaint, *State v. Montgomery*, No. 298399, slip op. at 1 (Hamilton Cnty Crim. Ct. Dec. 16, 2016)[3]].

- From February 15, 2016, through December 2016, Pinkston gave interviews to the media in which he gave false and inaccurate information regarding the assault in Gatlinburg including that Montgomery and Nayadley had violated state law by failing to report child sexual abuse. [*Id*. ¶¶ 55-62, 72, 89-90].

- On May 11, 2016, Nayadley accepted pre-trial diversion. [Amended Complaint ¶ 80]. Nayadley faces loss of his teaching license "because of his prosecution and his decision to accept judicial diversion." [*Id*. ¶ 86].

- On September 16, 2016, Pinkston published a report that contained many false and inaccurate allegations concerning Montgomery, Nayadley, and Jarvis—including that they knew of ongoing hazing and bullying on the basketball team and had refused to stop it. [*Id*. ¶¶ 91-100]. "Pinkston maintained a website dedicated to activity on the failure to report case unfairly titled Ooltewah High School Basketball Team Sexual Assaults; [sic] and also sought to participate in public press conferences and appearances on the issue." [*Id*. ¶ 65 ].

- On December 16, 2016, the Hamilton County Criminal Court dismissed the charges against Montgomery finding that Montgomery had no duty under Tennessee law to report the December 22, 2015 assault as child sexual abuse because the assault did not meet the statutory definition of child sexual abuse. [*Id*. ¶¶ 82, 172; *Montgomery*, No. 298399, slip op. at 3-6].

- Pinkston "through conscious disregard, persisted in prosecuting Montgomery . . . and Nayadley for approximately one year." [*Id*. ¶ 79]. "Pinkston took it upon himself to pursue criminal charges when none could be pursued . . . set[ting] in motion a chain of events which have forever damaged Montgomery and Nayadley in their professions as coaches and teachers." [*Id*. ¶ 83]. Pinkston engaged in extra-judicial statements which "could only prejudice the public or otherwise influence the public against Montgomery, Nayadley, and Jarvis." [*Id*. ¶ 89].

---

[3] The Hamilton County Criminal Court's opinion indicated Pinkston charged Montgomery with failure to report "child sexual abuse" only—not "child abuse." [*Montgomery*, No. 298399, slip op. at 1]. This opinion shall hereinafter be cited as "*Montgomery*, No. 298399, slip op. at ___."

- Pinkston made false, extra judicial statements in his September 16, 2016, report that Montgomery and his wife attempted to cover up crimes, failed to preserve evidence, told players not to discuss the incident with their parents, ignored complaints of hazing and bullying, knew of other assaults by team members against other team members, and did not care about the injured player; these false statements influenced the public against Montgomery, Nayadley, and Jarvis. [*Id.* ¶¶ 90, 93, 94, 96, 97, 99].

- Montgomery, Nayadley, and Jarvis each had employment contracts with HCDE. [*Id.* ¶¶ 113-118]. HCDE and Superintendent Smith suspended Montgomery and Nayadley without pay on or about January 4, 2016. [*Id.* ¶¶ 84-85, 117-123].

- Pinkston acted "in concert" with HCDE and Smith to "unreasonably and discriminatorily punish[] Jarvis." [*Id.* ¶ 87].

- On June 20, 2016, HCDE demoted Jarvis by removing him as Principal of Ooltewah High School and reassigning him as Assistant Principal at East Hamilton High School. [*Id.* ¶¶ 122-123, Ex. 17 to Amended Complaint]. This demotion was a "de facto termination" of Jarvis' employment. [*Id.* ¶ 173].

- These actions against Jarvis were taken without justification and without due process in violation of his contract with HCDE and were motivated by race and age discrimination. [*Id.* ¶¶ 117-122,124-142].

- In December 2015, DCS "lodged a charge of lack of supervision against Mr. Montgomery." [*Id.* ¶ 143]. On February 28, 2016, "DCS filed charges against Montgomery . . . alleging lack of supervision" and those charges are still pending. [*Id.* ¶¶ 165-166]. These charges were motivated by racial discrimination and violated Montgomery's due process rights. [*Id.* ¶¶ 144-168]. As a result of the charges by DCS, Montgomery is unable to work as a teacher, coach or in any other capacity in any school system or college. [*Id.* ¶167].

- Plaintiffs seek compensatory and punitive damages only; they do not seek any form of equitable or injunctive relief. [*Id.* at pp. 71-72].

## III.    Standard of Review

### A.    Rule 12(b)(1) Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(1) is an assertion that Plaintiff's claims

for relief should be dismissed because the Court lacks subject matter jurisdiction to consider such

claims. The court in *Alpine Industries v. FTC*, 40 F. Supp.2d 938, 940 (E.D. Tenn. 1998), set

forth the correct procedures to review a motion to dismiss for lack of subject matter jurisdiction

pursuant to Fed. R. Civ. P. 12(b)(1):

> Motions to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P.
> 12(b)(1) generally come in two varieties. First, a facial attack on the basis for
> subject matter jurisdiction alleged in a complaint merely questions or tests the
> sufficiency of the pleading. In considering such facial attacks, the correct standard
> of review for a trial court is to take the allegations of fact in the complaint as being
> true. *Ohio Nat. Life Ins. Co. v. United States*, 922 F.2d 320, 325 (6th Cir.1990). On
> the other hand, when a court reviews a complaint which is under factual attack by
> a defendant, the allegations of fact in the complaint are not presumed to be true. If
> there is a factual dispute, the district court must weigh the conflicting evidence to
> determine whether jurisdiction exists. The district court has broad discretion to
> consider affidavits, documents outside the complaint, and to even conduct a limited
> evidentiary hearing if necessary to resolve disputed jurisdictional facts. *Id.*
> Consideration of such evidence does not convert the motion into one for summary
> judgment.

In the instant case, all attacks on the subject matter jurisdiction of this Court are facial attacks—

questioning or testing the sufficiency of the pleading—and can be resolved based on the allegations

in the Amended Complaint and the exhibits attached to it. Consequently, for purposes of

Defendants' Rule 12(b)(1) motions to dismiss, the correct standard of review for the Court is to

take the allegations of fact in the complaint as being true.

### B. Rule 12(b)(6) Standard

A motion to dismiss under Fed. R. Civ. P. 12(b)(6) is an assertion that the complaint fails

to state a claim upon which relief can be granted. Such a motion to dismiss is meant to test the

sufficiency of the complaint; it does not resolve the facts of the case. *Cox v. Shelby State Cmty.*

*Coll.*, 48 F. App'x. 500, 503 (6th Cir. 2002); *Metz v. Supreme Court of Ohio*, 46 F. App'x. 228,

233 (6th Cir. 2002); *Thielen v. GMAC Mortg. Corp.*, 671 F. Supp. 2d 947, 950 (E.D. Mich. 2009).

In determining whether a party has set forth a claim in his complaint upon which relief can be

granted, all well-pleaded factual allegations contained in the complaint must be accepted as true.

*Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam). This tenet does not apply to legal

conclusions set forth in a complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Threadbare

recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* More than "unadorned, the-defendant-unlawfully-harmed me accusation[s]" are required to state a claim. *Id.* "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* at 696 (brackets original) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S 544, 557 (2007)). The complaint must state "a plausible claim." *Iqbal*, 556 U.S. at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In determining whether a complaint states a plausible claim for relief, the Court may draw on its judicial experience and common sense. *Id.* at 679. Well-pleaded facts that permit the court to infer no more than a mere possibility of misconduct will not permit a complaint to survive a motion to dismiss. *Id.*

## IV. Analysis

### A. Tennessee Department of Children's Services' Motion to Dismiss

#### 1. Background

In Count Two of the Amended Complaint, Montgomery brings a claim against TDCS under 42 U.S.C. § 1981. In this claim, Montgomery alleges that TDCS "deprived Montgomery of his ability to maintain his employment contract with HCDE" by charging him with lack of supervision when similarly-situated Caucasian coaches whose players engaged in conduct similar to that which gave rise to this action were not charged with lack of supervision. [Amended Complaint ¶¶ 208, 210-212].

In Count Four, Montgomery brings a claim against TDCS under 42 U.S.C. § 1983 alleging TDCS violated his due process rights by "indicat[ing] and subsequently substantiat[ing] Montgomery for lack of supervision all without a hearing or an opportunity to present a defense

to defend himself" and by "publishing substantiations to his employer while he had both criminal and civil matters pending—which is against [T]DCS policy and regulation." [Amended Complaint ¶¶ 267-268].

### 2. Montgomery's Claims Against TDCS Brought Under 42 U.S.C. § 1981 and 42 U.S.C. § 1983

TDCS relies upon Fed. R. Civ. P. 12(b)(1) in moving to dismiss [Doc. 135] Montgomery's claims brought under 42 U.S.C. §§ 1981 and 1983. More specifically, TDCS asserts that this Court lacks subject matter jurisdiction to hear Montgomery's claims against it because, as a subdivision of the State of Tennessee, it is entitled to sovereign immunity under the Eleventh Amendment of the United States Constitution. There is no dispute that TDCS is a subdivision of the State of Tennessee. Plaintiffs expressly admit this fact in paragraph 10 of the Amended Complaint.

Although the plaintiff generally bears the burden of proving federal subject matter jurisdiction in response to a motion brought under Fed. R. Civ. P. 12(b)(1), the entity claiming sovereign immunity under the Eleventh Amendment bears the burden of proving its entitlement to such immunity. *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002). The Eleventh Amendment stands for the constitutional principal that state sovereign immunity limits a federal court's jurisdiction under Article III.[4] *Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 93 (1996). Absent congressional abrogation or a state's waiver of its Eleventh Amendment immunity, the Eleventh Amendment bars suits for money damages against the state and state officials sued in their official capacities. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Maben*

---

[4] The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. Const. amend. XI

*v. Thelen*, 887 F.3d 252, 270 (6th Cir. 2018); *Russell v. Lundergan-Grimes*, 784 F.3d 1037, 1046 (6th Cir. 2015).

Congress did not abrogate Eleventh Amendment immunity for actions brought against states under 42 U.S.C. § 1983 or 42 U.S.C. § 1981. *See Quern v. Jordan*, 440 U.S. 332, 345 (1979) (no abrogation of Eleventh Amendment immunity for claims brought under Section 1983); *Boler v. Early*, 865 F.3d 391, 410 (6th Cir. 2017) (same); *Freeman v. Mich. Dep't of State*, 808 F.2d 1174, 1178–79 (6th Cir. 1987) (no abrogation of Eleventh Amendment immunity for claims brought under Section 1981). Moreover, Tennessee has not waived its Eleventh Amendment immunity for claims brought under Section 1983 or Section 1981. *See Berndt v. Tennessee*, 796 F.2d 879, 881 (6th Cir. 1986) (no consent to suit under 42 U.S.C. § 1983); *Henderson v. Sw. Tenn. Cmty. Coll.*, 282 F. Supp. 2d 804, 807 (W.D. Tenn. 2003) (Tennessee has not consented to suit under 42 U.S.C. § 1981); Tenn. Code Ann. § 9-8-307(f) (Tennessee does not consent to federal suit).

Plaintiff Montgomery responds that TDCS has no immunity because of an exception to Eleventh Amendment immunity created by *Ex parte Young*, 209 U.S. 123 (1908). The Supreme Court in *Ex parte Young* did create an exception to Eleventh Amendment immunity; however, this exception is limited to actions brought by a plaintiff against a state official in his official capacity seeking prospective *equitable* relief to prevent future federal constitutional or statutory violations. *Boler*, 865 F.3d at 412 (citing *S & M Brands, Inc. v. Cooper*, 527 F.3d 500, 507 (6th Cir. 2008)). That exception does not apply here. *Boler*, 865 F.3d at 412 ("the [*Ex parte Young*] doctrine does not extend to retroactive relief or claims for money damages"); *see also Drinkard v. Tenn. Dep't of Children's Servs.*, No. 2:08-CV-005, 2008 WL 2609166, at *2 (E.D. Tenn. June 26, 2008) (dismissing complaint against TDCS on Eleventh Amendment grounds where complaint sought

only money damages against TDCS). Montgomery does not seek *equitable* relief against TDCE. Rather, he seeks only monetary damages against TDCS. Eleventh Amendment immunity applies in this situation. Consequently, this Court lacks subject matter jurisdiction to consider Montgomery's claims brought against TDCS under 42 U.S.C. §§ 1981 and 1983. Counts Two and Four of the Complaint will be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(1).

Plaintiffs bring no other federal claims against TDCS. Plaintiffs have asserted several state law claims against TDCS, *to wit*, malicious prosecution, defamation, negligent infliction of emotional distress, and intentional infliction of emotional distress. When a Court has dismissed all claims over which it has original jurisdiction, it may decline to exercise supplemental jurisdiction over related state law claims. 28 U.S.C. § 1367(c)(3). "'Generally, if the federal claims are dismissed before trial, . . . the state claims should be dismissed as well.'" *Harper v. Auto Alliance Int'l*, 392 F.3d 195, 210 (6th Cir. 2004) (quoting *Taylor v. First of Am. Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir.1992)). Plaintiffs' state law claims raise questions of immunity under Tennessee law for state and municipal entities and for state employees. Tennessee courts are better positioned than this Court to address these important matters of Tennessee law. Accordingly, the Court will decline to exercise supplemental jurisdiction over the state law claims and will dismiss these state law claims without prejudice.

### B.    Hamilton County District Attorney General's Office's Motion to Dismiss

#### 1.    Background

Before discussing Plaintiffs claims against the Hamilton County District Attorney General's office, the Court would note that Plaintiffs refer to this Defendant in the caption of their Amended Complaint as "Hamilton County District Attorney's Office"; however, in the body of the Amended Complaint, Plaintiffs refer to this Defendant as "Hamilton County District Attorney

General Office" and sometimes as "HCDAGO." [*See* Amended Complaint ¶ 11, Doc. 128]. The Court recognizes that all three of these names refer to the same entity. And, as indicated previously, the Court will refer to this Defendant by the shorthand, "HCDAGO." More important to this discussion though, the Court takes judicial notice that the formal name of the Hamilton County District Attorney General's Office is the *District Attorney General's Office for the 11th Judicial District of Tennessee*.[5] The formal legal name of this entity is important because it clearly communicates that it is a subdivision of the State of Tennessee, not an arm of city or county government. As will be evident below, HCDAGO's status as a subdivision of Tennessee state government is important to the determination of Plaintiffs' claims against this entity.

Now with respect to Plaintiffs' claims, in Count Three of the Amended Complaint, Montgomery and Nayadley bring claims against HCDAGO under 42 U.S.C. § 1983 alleging HCDAGO "depriv[ed] them of their constitutional rights of, among others, . . . due process, freedom from false arrest, freedom from malicious prosecution, freedom from unreasonable seizure, [and] freedom from abuse of process. . . ." [Amended Complaint ¶ 228]. Montgomery and Nayadley allege they were arrested without probable cause and that, without due process, they were unreasonably prosecuted for failure to report child abuse because the assault, which occurred in Gatlinburg, Tennessee, on December 22, 2015, "did not qualify as child sexual abuse or child abuse [as defined by Tennessee law] and thus was not reportable." [*Id.* ¶ 257, *see also* Count Three, generally]. Montgomery and Nayadley also allege in Count Three that HCDAGO "further acted with conscious disregard and grossly unreasonably in publishing on September 16, 2016 to

---

[5] "The court may judicially notice a fact that is not subject to reasonable dispute because it: (1) is generally known within the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). The Court notes that HCDAGO does not challenge its appearance before this Court on the basis of Plaintiffs' failure to properly identify it as the District Attorney General's Office for the 11th Judicial District of Tennessee.

third parties … [a] [r]eport which aired inaccurate and untrue facts about both Montgomery and

Nayadley all while a criminal prosecution was pending and did so outside a judicial forum." [*Id.*

¶ 258].

### 2. Montgomery's and Nayadley's Claims against HCDAGO Brought Under 42 U.S.C. § 1983

HCDAGO moves to dismiss all claims brought against it for, among other reasons, lack of

subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1). [Doc. 133]. HCDAGO asserts it is

an arm of the State of Tennessee and is thus entitled to sovereign immunity under the Eleventh

Amendment. Montgomery and Nayadley assert that HCDAGO is a "municipal entity [that] does

not enjoy absolute immunity." [Pls.' Resp. at 6, Doc. 140]. Montgomery and Nayadley are correct

in stating that municipal entities are not immune from suit under 42 U.S.C. § 1983; however, they

provide no support for the contention that HCDAGO is a municipal entity as opposed to a state

entity.

As HCDAGO observes, the Tennessee state legislature divided the State of Tennessee into

thirty-one judicial districts. Tenn. Code Ann. § 16-2-506. Some judicial districts contain several

counties while others in the urban centers of Tennessee, such as the eleventh judicial district, are

comprised of only one county. *Id.* The eleventh judicial district, as established by state statute,

encompasses only Hamilton County. Tenn. Code Ann. § 16-2-506(11)(A) ("The eleventh judicial

district consists of the county of Hamilton.")  State law provides for the establishment of district

attorney generals in the judicial districts assigned by Tenn. Code Ann. § 16-2-506. *See* Tenn. Code

Ann. § 16-2-508(a).

The Court concludes that HCDAGO is a subdivision of the State of Tennessee. *See also*

*Sentell v. Tennessee*, No. 3:12-cv-593, 2013 WL 3820021, at *2 (E.D. Tenn. July 23, 2013)

(Varlan, J.) (holding district attorneys general in Tennessee are state officials; a suit brought

against a district attorney general in his official capacity is a suit against the State; and the State is entitled to Eleventh Amendment immunity for a claim brought against it under 42 U.S.C. § 1983); *see also State v. Spradlin,* 12 S.W.3d 432, 437 (Tenn. 2000) ("the trial court made a factual finding that the State (acting through the district attorney general's office….")).

As previously discussed, a subdivision of the State of Tennessee is immune from suit under Section 1983 pursuant to the Eleventh Amendment. Consequently, this Court lacks subject matter jurisdiction to hear Plaintiffs' Section 1983 claim, and it will be dismissed with prejudice under Fed. R. Civ. P. 12(b)(1).

Plaintiffs have asserted no other federal claims against HCDAGO. The Amended Complaint does allege several state law claims against HCDAGO, *to wit*, negligence, false arrest and false imprisonment, malicious prosecution, abuse of process, defamation, negligent infliction of emotional distress, intentional infliction of emotional distress, and selective prosecution. Plaintiffs Bonita Montgomery, Janet Nayadley, and Amelia Jarvis have also brought claims under state law for loss of consortium. For reasons discussed above, the Court will dismiss without prejudice these state law claims against HCDAGO.

### C.     The Hamilton County Department of Education and Rick Smith's Motion to Dismiss

#### 1.     Background

In Count One, Plaintiffs Montgomery, Nayadley, and Jarvis bring a claim against HCDE and against Rick Smith in his individual and official capacities under 42 U.S.C. § 1981. They allege that "HCDE intentionally, through Rick Smith, acted in concert with Pinkston and [T]DCS. HCDE and Rick Smith used inaccurate and false information to suspend, transfer, and demote Montgomery, Nayadley, and Jarvis in violation of their contract with HCDE." [Amended

Complaint ¶189]. Plaintiffs allege these actions were motivated by their race and their gender. [*Id.* ¶¶ 102-140, 190-99]. Plaintiffs further allege:

> The actions of the defendants violated clearly established and well-settled rights to make and enforce contracts being protected from the intentional assertion of false and inaccurate facts to justify suspension, transfer, demotion and termination while, in the case of Montgomery, similarly situated Caucasians were treated differently under the exact same contract.

> Further, the actions of the defendants violated clearly established and well-settled rights to make and enforce contracts being protected from the intentional assertion of false and inaccurate facts to justify suspension, transfer, demotion and termination while, in the case of Nayadley and Jarvis, similarly situated African-Americans were treated differently under the exact same contract.

[*Id.* ¶¶ 202-203].

### 2. Montgomery's, Nayadley's, and Jarvis' Claims against HCDE and Rick Smith Brought Under 42 U.S.C. § 1981

HCDE and Rick Smith move jointly to dismiss Plaintiffs' claims against them pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted. [Doc. 137]. HCDE and Rick Smith assert that this Section 1981 claim is the only federal claim brought against them. They further argue that Plaintiffs' Section 1981 claim should be dismissed because 42 U.S.C. § 1983 is the exclusive mechanism for asserting rights against state actors protected by 42 U.S.C. § 1981. The Court agrees.

Plaintiffs have not brought a Section 1983 claim against HCDE and/or Smith in the Amended Complaint. Plaintiffs caption Count One of the Amended Complaint, "VIOLATION OF 42 U.S.C. § 1981 BY HCDE AND RICK SMITH (AS TO MONTGOMERY, NAYADLEY, AND JARVIS)." [*Id.* at p. 29]. Nowhere in the body of Count One do Plaintiffs reference Section 1983; they refer exclusively to Section 1981. [*See Id.* ¶¶ 187-204].

The Court further notes that Plaintiffs have not responded to HCDE and Smith's argument that the Amended Complaint is facially deficient because it does not state a Section 1983 claim

against them. Rather, Plaintiffs' response simply ignores this argument and proceeds as if a Section

1983 claim had been stated. Having failed to address this argument in their brief, they have waived

opposition to it. *Johnson v. Apple, Inc.*, No. 3:13-cv-204, 2014 WL 4076148, at *1 (S.D. Ohio

Aug. 14, 2014) ("Based upon Johnson's failure to address any of the arguments advanced by Apple,

it appears that he has waived opposition to Apple's motion [to dismiss filed pursuant to Fed. R.

Civ. P. 12(b)(6) for failure to state a claim].")[6]

Beyond Plaintiffs' waiver for failure to respond, the Court finds HCDE and Rick Smith's

substantive position to be meritorious. Section 1983 is the exclusive federal remedy for violations

of rights guaranteed by Section 1981 when a party seeks damages against a state actor in his official

or individual capacities. *Grinter v. Knight*, 532 F.3d 567, 576 (6th Cir. 2008) ("[T]he express

action at law provided by § 1983 for the deprivation of any rights, privileges, or immunities secured

by the Constitution and laws, provides the exclusive federal damages remedy for the violation of

the rights guaranteed by § 1981 when the claim is asserted against a state actor in his official

capacity") (quoting *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)); *see also*

*McCormick v. Miami Univ.*, 693 F.3d 654, 661 (6th Cir. 2012) ("§ 1983 is the exclusive mechanism

to vindicate violations of § 1981 by an individual state actor acting in his individual capacity.") [7]

The Court concludes this claim brought against HCDE and against Smith in both his official and

---

[6] *See also Porter v. Louisville/Jefferson Cnty. Metro Gov't*, No. 3:12-cv-829-CRS, 2017 WL 3485062, at *3 (W.D. Ky. Aug. 11, 2017) ("[A] non-moving party waives an argument by failing to address the argument in [his] response brief.") (quoting *Keys v. Dart Container Corp.*, No. 1:08-cv-00138-JHM, 2012 WL 2681461, at *7 (W.D. Ky. July 6, 2012)); *Lee v. Wilson Cnty. Jail, Lebanon*, No. 16-5981, 2017 WL 2819220, at* 1 (6th Cir. Mar. 31, 2017) ("Having failed to address the merits of defendants' summary-judgment motion, Lee has waived any challenge to the district court's order granting that motion."); *Correa v. Rubin Lublin TN, PLLC*, No. 15-2135, 2015 WL 5232081, at *3 (W.D. Tenn., Sept. 8, 2015) (Plaintiff's failure to address dispositive argument raised in a motion to dismiss amounts to a waiver of the issue).

[7] *See also Anderson v. Dickerson*, Case No. 5:16-cv-71-KKC, 2016 WL 4015176, at *2 (E.D. Ky. July 26, 2016) ("Section 1983 is the exclusive damages remedy for violations of rights guaranteed by Section 1981"); *Russell v. City of Detroit*, No. 16-cv-11857, 2018 WL 2045957, at *5 (E.D. Mich. May 2, 2018) (same); *Bryant v. City of Memphis*, No. 2:14-cv-02122-JTF-cgc, 2014 WL 11515516, at * 5 (W.D. Tenn. Oct. 3, 2014) ("when a state actor is the alleged violator, § 1983 is the exclusive remedy for violations of § 1981.")

individual capacities under Section 1981 must be dismissed with prejudice for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

Plaintiffs bring no other federal claims against HCDE and Rick Smith; however, the Amended Complaint alleges several state law clams against HCDE and Smith, *to wit*, negligence; breach of contract; age, race, and gender discrimination in violation of Tenn. Code Ann. § 4-21-401, *et seq.*; defamation; negligent infliction of emotional distress; and intentional infliction of emotional distress. Bonita Montgomery, Janet Nayadley, and Amelia Jarvis have also brought claims under state law for loss of consortium. The Court will dismiss without prejudice the state law claims against HCDE and Rick Smith.

### D.   Hamilton County District Attorney General Pinkston's Motion to Dismiss

#### 1.   Background

In Count Three of the Amended Complaint, Montgomery, Nayadley, and Jarvis[8] bring various claims under 42 U.S.C. § 1983 against Hamilton County District Attorney General Pinkston. They allege Pinkston violated "their constitutional rights of, among others, to [sic] due process, freedom from false arrest, freedom from malicious prosecution, freedom from unreasonable seizure, freedom from abuse of process, and freedom for which Pinkston is jointly and individually liable." [Amended Complaint ¶ 228]. Specifically, Montgomery and Nayadley allege Pinkston acted with "conscious disregard" of their rights and with "grossly unreasonable conduct" by having a criminal summons issued against them, by subsequently indicting them, and by prosecuting them "for a crime it was impossible for them to commit." [*Id*. ¶¶ 235-36].

---

[8] Count Three is entitled ""COUNT THREE - VIOLATION OF 42 U.S.C. § 1983 BY HCDAGO AND PINKSTON (AS TO MONTGOMERY AND NAYADLEY)." [Amended Complaint at p. 35, Doc. 128]. Thus, it would appear that Count Three is brought by Montgomery and Nayadley only. However, in the body of Count Three, there are some references to Jarvis, and Count Three asks for damages on behalf of Jarvis. [*Id*. ¶ 264]. To the extent that the Court can discern Jarvis' claims, the Court will address them.

"Montgomery and Nayadley suffered damage through loss of employment, loss of benefits, and a criminal record which prevents them from obtaining employment in their chosen profession." [*Id*. ¶ 239]. Pinkston engaged in extra-judicial statements, including the September 16, 2016 report, which will impair Montgomery's ability to obtain future employment. [*Id*. ¶¶ 250, 258]. Plaintiffs also allege "defendants violated clearly established and well-settled rights to make and enforce contracts [sic] being protected from the intentional assertion of false and inaccurate facts to justify suspension, transfer, demotion and termination while, in the case of Montgomery, similarly situated Caucasians were treated differently under the exact same contract." [*Id*. ¶ 262].

### 2. Claims Against Pinkston in His Official Capacity Brought Under 42 U.S.C. § 1983

Paragraph nine of the Amended Complaint states that Defendant Pinkston "is sued in his individual and official capacity [sic]." [*Id.* ¶ 9, Doc. 128]. A claim against a government employee in his official capacity constitutes a claim against the governmental entity itself and cannot be maintained independently from the claim against the governmental entity. *Kentucky v. Graham*, 473 U.S. 159 (1985); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994). Thus, a suit against Pinkston in his official capacity is a suit against HCDAGO. As previously discussed, HCDAGO is entitled to immunity under the Eleventh Amendment for all claims brought under Section 1983. For that reason, the Court will dismiss this claim with prejudice.

### 3. Montgomery's, Nayadley's, and Jarvis' Claims Against Pinkston in His Individual Capacity Brought Under 42 U.S.C. § 1983

Plaintiffs bring several causes of action against Pinkston in his *individual* capacity in Count Three of the Amended Complaint—all under the umbrella of 42 U.S.C. § 1983. Section 1983 does not—in and of itself—create independent substantive legal rights; rather, this statute simply provides a vehicle by which a person may recover damages for a violation of rights secured to him

by federal law. *Radvansky v. City of Olmstead Falls*, 395 F.3d 291, 302 (6th Cir. 2005); *Pyles v. Raisor*, 60 F.3d 1211, 1215 (6th Cir. 1995).

Plaintiffs allege that Pinkston committed several violations of different rights, and they aggregate these claims in Count Three. The Court found it challenging to identify each constitutional deprivation alleged against Pinkston and then to connect each such claim with relevant facts among those strewn across the 5 pages and 36 paragraphs of Count Three of the Amended Complaint. Nevertheless, the Court made a diligent effort.

To bring a claim under Section 1983, a plaintiff must satisfy two requirements: (1) that the defendants were acting under color of state law when; (2) they caused plaintiff a deprivation of a right, privilege, or immunity secured to him by the United States Constitution or other federal law. *Gregory v. Shelby Cnty., Tenn.,* 220 F.3d 433, 441 (6th Cir. 2000); *Baker v. Hadley,* 167 F.3d 1014, 1017 (6th Cir. 1999); *Valot v. Se. Local Sch. Dist. Bd. of Educ.*, 107 F.3d 1220, 1225 (6th Cir. 1997). Plaintiffs satisfy the first requirement: the parties do not dispute that Pinkston acted under color of law at all times relevant to this lawsuit. The Court will examine the second requirement in the following sections.

a)    **Montgomery's and Nayadley's Fourth Amendment Claims of False Arrest, Abuse of Process and Malicious Prosecution**

Montgomery and Nayadley assert that Pinkston violated the Fourth Amendment through commission of false arrest, abuse of process and malicious prosecution. More specifically, they allege that Pinkston—in furtherance of his position that Montgomery and Nayadley had violated the Tennessee child abuse/child sexual abuse reporting law—took the following actions: (1) Pinkston caused them to receive a summons to Hamilton County Juvenile Court; (2) he sought an indictment against them in Hamilton County Criminal Court; and (3) he criminally prosecuted them. The Court notes that claims alleging constitutional deprivations for false arrest, abuse of

process, and malicious prosecution are properly brought under the Fourth Amendment. *See, e.g.*, *Tunne v. Paducah Police Dept.*, No. 5:08CV-188-R, 2010 WL 323547, at *14 (W.D. Ky Jan. 21, 2010). The Fourth Amendment applies to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 650 (1961); *Thomas v. Cohen*, 304 F.3d 563, 569 (6th Cir. 2002). Count Three of the Amended Complaint does not reference the Fourth or Fourteenth Amendments, nor does it explicitly state any other constitutional amendment or federal statute which supplies the substantive right that Plaintiffs contend Pinkston has denied them. Paragraph 2—which is an introductory paragraph in the 420-paragraph Amended Complaint—is the sole paragraph in the entire document that references either the Fourth and Fourteenth Amendments as a basis for jurisdiction for any of the claims asserted.[9] The Court feels compelled to note that, in amending the complaint, Plaintiffs ignored the Court's February 2018 order directing them to plead each cause of action in a separate count—identifying the statutory or common law basis for each cause of action, and the facts upon which each cause of action is based. [Feb. 23, 2018 Order, Doc. 125]. Instead, Plaintiffs leave it to the Court to search through a 73-page pleading to try to find the constitutional amendment or federal statute that gives them a right to assert federal causes of action for false arrest, abuse of process and malicious prosecution. Through a process of elimination, the Court assumes that Plaintiffs rely upon the Fourth and Fourteenth Amendments to support their Section 1983 claims of wrongful arrest, abuse of process, and malicious prosecution.

---

[9] "This action is brought under the laws of the State of Tennessee, and pursuant to 42 U.S.C. § 1981, 1983, the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and the common and statutory laws of the State of Tennessee to redress the violation by the Defendants of, among other things, the Plaintiffs' rights secured by the Fourth and Fourteenth Amendments to the Constitution of the United States." [Amended Complaint ¶ 2, Doc. 128].

In response, Pinkston asserts prosecutorial immunity with respect to each of these claims.[10] "'A claim of prosecutorial immunity may be asserted in a Rule 12(b)(6) motion to dismiss.'" *Nouri v. Cnty. of Oakland*, 615 F. App'x. 291, 301 (6th Cir. 2015) (quoting *Barr v. Gee*, 437 F. App'x 865, 876 (11th Cir. 2011) (per curiam)). A prosecutor enjoys absolute immunity for functions which are "intimately associated with the judicial phase of the criminal process." *Van de Kamp v. Goldstein*, 555 U.S. 335, 341 and 345 (2009); *see also Howell v. Sanders*, 668 F.3d 344, 349-50 (6th Cir. 2012) ("'[T]he critical inquiry is how closely related is the prosecutor's challenged activity to his role as an advocate intimately associated with the judicial phase of the criminal process'") (quoting *Ireland v. Tunis*, 113 F.3d 1435, 1443 (6th Cir. 1997)). "[T]he test for determining if absolute immunity is appropriate turns on the 'nature of the function performed, not the identity of the actor who performed it.'" *Eldridge v. Gibson*, 332 F.3d 1019, 1020 (6th Cir. 2003) (quoting *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993)). Absolute immunity for a prosecutor "reflects 'a balance' of 'evils.'" *Van de Kamp*, 555 U.S. at 340 (quoting *Gregoire v. Biddle*, 177 F.2d 579, 581 (2d Cir. 1949) (Hand, C.J.). As the Supreme Court explained,

> The "public trust of the prosecutor's office would suffer" were the prosecutor to have in mind his "own potential" damages "liability" when making prosecutorial decisions—as he might well were he subject to § 1983 liability. [*Imbler v. Pachtman*, 424 U.S. 409] at 424, 96 S. Ct. 984. This is no small concern, given the frequency with which criminal defendants bring such suits, *id.*, at 425, 96 S.Ct. 984 ("[A] defendant often will transform his resentment at being prosecuted into the ascription of improper and malicious actions to the State's advocate"), and the "substantial danger of liability even to the honest prosecutor" that such suits pose when they survive pretrial dismissal, *ibid.*; *see also ibid.* (complex, close, fair-trial questions "often would require a virtual retrial of the criminal offense in a new forum, and the resolution of some technical issues by the lay jury"). A "prosecutor," the Court noted, "inevitably makes many decisions that could engender colorable claims of constitutional deprivation. Defending these decisions, often years after they were made, could impose unique and intolerable burdens upon a prosecutor

---

[10] The Court has assumed, for purposes of analysis only, that the Amended Complaint stated all elements of these three causes of action. The Court need not address Pinkston's other arguments for dismissal since these claims will be dismissed based on the defense of prosecutorial immunity.

responsible annually for hundreds of indictments and trials." *Id*., at 425–426, 96 S. Ct. 984.

*Van de Kamp*, 555 U. S. at 342; *see also Burns v. Reed*, 500 U.S. 478, 494 (1991) ("[a]bsolute immunity is designed to free the judicial process from the harassment and intimidation associated with litigation") (emphasis omitted). "'[T]he safeguards built into the judicial system tend to reduce the need for private damages actions as a means of controlling unconstitutional conduct.'" *Burns,* 500 U.S. at 492 (quoting *Butz v. Economou,* 438 U.S. 478, 512 (1978)).

Issuing process to make an arrest, seeking indictments to begin a prosecution, and engaging in prosecutions are fundamental functions of a prosecutor entitling them to absolute immunity. *Buckley*, 509 U.S. at 269 (a state prosecutor has absolute immunity for the initiation and pursuit of a criminal prosecution, including presentation of the state's case at trial) (citing *Imbler v. Pachtman*, 424 U.S. 409 (1976)); *see also Howell*, 668 F.3d at 349 ("prosecutor's decision to initiate a prosecution, including the decision to file a criminal complaint or seek an arrest warrant, is protected by absolute immunity"); *Adams v. Hanson*, 656 F.3d 397, 402 (6th Cir. 2011) (listing functions for which a prosecutor enjoys absolute immunity including preparing and filing documents unsworn by the prosecutor in order to obtain an arrest warrant and seeking an indictment from a grand jury); *Holloway v. Brush*, 220 F.3d 767, 775 (6th Cir. 2000) ("Prosecutorial immunity extends to a prosecutor's decision to file a criminal complaint and seek an arrest warrant and the presentation of these materials to a judicial officer") (internal citation omitted).

Despite what appears to be Pinkston's well-founded assertion of prosecutorial immunity, Plaintiffs have raised several arguments disputing absolute, prosecutorial immunity. First, Plaintiffs rely on *Anderson v. Creighton*, 483 U.S. 635 (1987) to argue Pinkston is not entitled to prosecutorial immunity. [Pls.' Resp. at 9-12, Doc. 146]. *Creighton* does not address absolute

immunity for prosecutorial actions. *Creighton* addresses whether an FBI agent was entitled to qualified immunity from civil liability for conducting a warrantless search. *Creighton* is inapposite to this Court's analysis of prosecutorial immunity as it applies to Pinkston.

Second, Plaintiffs argue that Pinkston "violated his fiduciary duty not to prosecute the innocent" pursuant to Tennessee Supreme Court Rule 8, RPC 3.8(1)(a), (d) and (f), and that this breach of the duty "destroys any claim to immunity. . . ." [Pls.' Resp. at 13, Doc. 146]. Plaintiffs offer no authority to support this theory of liability. Recognizing breach of "fiduciary duty" as an exception to prosecutorial immunity would effectively eviscerate such immunity. This Court will not adopt such an imaginative and impractical exception to prosecutorial immunity. And indeed, the Tennessee Supreme Court never intended that a violation of its Rules of Professional Conduct would form the basis for a civil cause of action. In the preamble to the Rules, the Tennessee Supreme Court wrote:

> Violation of a Rule should not itself give rise to a cause of action against a lawyer nor should it create any presumption in such a case that a legal duty has been breached. In addition, violation of a Rule does not necessarily warrant any other nondisciplinary remedy, such as disqualification of a lawyer in pending litigation. The Rules are designed to provide guidance to lawyers and to provide a structure for regulating conduct through disciplinary agencies. They are not designed to be a basis for civil liability. Furthermore, the purpose of the Rules can be subverted when they are invoked by opposing parties as procedural weapons. The fact that a Rule is a just basis for a lawyer's self-assessment, or for sanctioning a lawyer under the administration of a disciplinary authority, does not imply that an antagonist in a collateral proceeding or transaction has standing to seek enforcement of the Rule. Nevertheless, in some circumstances, a lawyer's violation of a Rule may be relevant in determining whether there was also a breach of the applicable standard of conduct.

*See* Tenn. Sup. Ct. R. 8, Preamble ¶ 21. If Plaintiffs believe that Pinkston breached Rule 3.8 of the Rules of Professional Conduct, there are procedures by which Plaintiffs and their counsel can assert that violation; however, there is no basis to use that alleged breach as leverage to support a civil cause of action.

Third, Plaintiffs argue that Pinkston has no prosecutorial immunity because he "egregiously and unreasonably ignored [T]DCS's definition of child sexual abuse as well as statutory requirements of reporting child sexual abuse."[11] [Pls.' Resp. at 9, Doc. 146]. Again, Plaintiffs have cited no authority that Pinkston was bound by TDCS' definition of child sexual abuse. More importantly—and as discussed previously—to determine whether a prosecutor is clothed with absolute immunity for certain conduct, the Court examines whether the prosecutor was acting within the scope of his prosecutorial duties as an advocate for the State, not whether he acted reasonably in doing so. *Ireland v. Tunis*, 113 F.3d 1435, 1447 (6th Cir. 1997) ("That [the plaintiff] ascribes impure and malicious motives to the prosecutors is of no consequence, for absolute immunity provides complete protection from judicial scrutiny of the motives for the prosecutors' actions"); *see also Adams*, 656 F.3d at 405 ("'a prosecutor's allegedly improper motive alone is not enough to defeat absolute immunity, so long as the general nature of his actions falls within the scope of his duties as an advocate for the state'") (quoting *Cady v. Arenac Cnty*, 574 F.3d 334, 341 (6th Cir. 2009)). That Pinkston's interpretation of the statute at issue was ultimately found to be incorrect is of no consequence to the application of absolute immunity. Prosecutorial functions—such as issuing a summons to require a person to come to court on criminal charges, seeking an indictment from a grand jury, and prosecuting a person based on an interpretation of a criminal statute—are basic responsibilities of a prosecutor as an advocate for the State. These functions are essential requirements of the judicial phase of criminal prosecution. *See e.g.*, *Ireland*, 113 F.3d at 1447 (prosecutors have absolute immunity for filing criminal complaint, seeking an arrest warrant, and presenting charging documents to judge). Were prosecutors subject to civil liability every time they failed to obtain a conviction after initiating prosecution, the criminal

---

[11] The quoted section is a heading in which the first letter of each word, except articles, is capitalized.

justice system would grind to a halt under the sheer weight of the resultant civil lawsuits.

Moreover, the Court does not agree with Plaintiffs' assertion that Pinkston's interpretation of the Tennessee statute requiring reporting of child sexual abuse was unreasonable or entirely misplaced. To fully understand Plaintiffs' argument, it is necessary to examine the relevant Tennessee statutes. Pinkston indicted Montgomery and Nayadley for failure to report child sexual abuse in violation of Tenn. Code Ann. § 37-1-615. [*See Montgomery*, No. 298399, slip op. at 1]. Tenn. Code Ann. § 37-1-605 (a) requires that teachers and school officials, among others, "who know[] or [have] reasonable cause to suspect that a child has been sexually abused [to] report such knowledge or suspicion to the [Tennessee Department of Children's Services] in the manner prescribed in subsection (b)." Subsection (b)(1) provides in relevant part,

> [e]ach report of known or suspected child sexual abuse pursuant to this section shall be made immediately to the local office of the [Tennessee Department of Children's Services] responsible for the investigation of reports made pursuant to this section or to the judge having juvenile jurisdiction or to the office of the sheriff or the chief law enforcement official of the municipality *where the child resides*.

*See* Tenn. Code Ann. § 37-1-605(b)(1) (emphasis added). Under Tenn. Code Ann. § 37-1-615(a), failure to report child abuse, if required by Tenn. Code Ann. § 37-1-605, is a misdemeanor.[12]

Pinkston interpreted the statute to mean that Montgomery and Nayadley were under a legal obligation to report the sexual assault of the minor to one of the following agencies: (1) the Hamilton County office of TDCS; (2) the Hamilton County juvenile court judge; (3) the Hamilton County Sheriff; or (4) the chief law enforcement official for the municipality where the student resided. The statute requires that appropriate reporting take place *where the child resides*. So, even though the assault took place in Sevier County, the reporting needed to take place where the

---

[12] Tenn. Code Ann. § 37-1-615(a) states, "[a]ny person required to report known or suspected child sexual abuse who knowingly and willfully fails to do so, or who knowingly and willfully prevents another person from doing so, commits a Class A misdemeanor."

minor resided at the time, i.e., Hamilton County.

Plaintiff argues that the Tennessee statute did not impose any reporting requirement on them because the juvenile who was sexually assaulted did not meet the definition of "child" as set forth in the statute. Plaintiffs' argument rests upon Tenn. Code Ann. §§ 37-1-602 which defines "child sexual abuse" in four separate subsections, *to wit*:

- Tenn. Code Ann. § 37-1-602(a)(3)(A) requires that the victim of abuse be under 13 years old.

- Tenn. Code Ann. § 37-1-602(a)(3)(B) also requires that the victim of abuse be under 13 years old.

- Tenn. Code Ann. § 37-1-602(a)(3)(C) does not explicitly include any age limitation for the victim.

- Tenn. Code Ann. § 37-1-602(a)(3)(D) requires that the victim of sexual abuse be between 13 and 17 years of age and that perpetrator of the abuse must be "a parent, guardian, relative, person residing in the child's home, or other person responsible for the care and custody of the child. . . ."

The freshman basketball player injured in the December 22, 2015, assault was older than thirteen but still a minor. [*Montgomery*, No. 298399, slip op. at 2.] Pinkston conceded that subsections A, B and D of Tenn. Code Ann. § 37-1-602(a)(3) did not apply; however, he maintained that the reporting requirement was triggered by subsection C of the statute. Since subsection C did not set forth a specific age limitation, Pinkston took the position that it applied to all minors, not just those under the age of 13.

The Hamilton County Criminal Court considered this issue as a matter of first impression and reached a different conclusion—finding that Subsection C implicitly included the requirement that the victim of abuse must be under the age of thirteen. [*Montgomery*, Case No. 298399, slip op. at 4]. The court reasoned, "even though the language of subsection (a)(3)(C) is unconditional with respect to age, the logical effect of the conditions of age in the other three subsections is to

make the definition in subsection (a)(3)(C) also conditional on age." [*Id.*]. In reaching this decision, the criminal court judge court also concluded that—had the "under 13" age limitation not applied—Pinkston would have been justified in bringing criminal charges against Montgomery for failing to report the sexual assault in Hamilton County "where the child resides." [*Id.* at 6]. Pinkston's reliance on Tenn. Code Ann. § 37-1-602(a)(3) proved to be misplaced; however, the position he took was not entirely illogical or unreasonable. Although this Court believes that the criminal court judge correctly decided the issue, it is conceivable that different jurists endeavoring to plumb the meaning of the same statute could arrive at different conclusions.

Regardless, this Court concludes that Pinkston acted within the scope of his function as a prosecutor when he examined the criminal statute at issue, initiated prosecution, and prosecuted Montgomery and Nayadley for failure to report an incident of child abuse/child sexual abuse.[13] Although the Hamilton County Criminal Court Judge disagreed with Pinkston's interpretation of the statute—ultimately dismissing the criminal charges—Pinkston was clothed in absolute immunity in the exercise of his prosecutorial functions. For the reasons set forth above, the Court will dismiss with prejudice Montgomery's and Nayadley's claims brought against Pinkston for this conduct.

> **b)** **Montgomery's and Nayadley's Fourth Amendment Claims Against Pinkston For Malicious Prosecution Based on Pinkston's Statements to the Press and Public**

As indicated in the recitation of facts above, Pinkston made a number of statements to members of the media about the investigation of the Ooltewah high school basketball team sexual assault incident as well as other allegations concerning the school's basketball program and the

---

[13] Plaintiffs do not make a distinction in the Amended Complaint or their arguments between "child abuse" and "child sexual abuse." The Court finds for purposes of the absolute immunity analysis, any difference between the two terms is irrelevant.

conduct of school officials. Montgomery and Nayadley claim that his statements support a Fourth Amendment claim for malicious prosecution.

A prosecutor is not entitled to absolute immunity for a Fourth Amendment malicious prosecution claim arising from statements the prosecutor made at a press conference. *Buckley v. Fitzsimmons*, 509 U.S. 259, 277-78 (1993). Nevertheless, to the extent that Montgomery and Nayadley seek to bring such a claim against Pinkston on the basis of statements he made to the press and in his September 2016 report, Plaintiffs fail to state a viable claim.

Plaintiffs contend that the allegedly false statements Pinkston made "inflamed" the public against them, but Plaintiffs do not allege that these statements caused them prejudice *in the prosecution* Pinkston brought against them. By comparison, in *Buckley v. Fitzsimmons*, 509 U.S. 259, 276-277 (1993), the plaintiff alleged that the prosecutor made false statements about him and released a mug shot of him at a press conference which "inflamed the populace of DuPage County against him, thereby defaming him, resulting in deprivation of his right to a fair trial, and causing the jury to deadlock rather than acquit." (Internal citations omitted).

Whatever public statements Pinkston made about Montgomery and Nayadley before and during his prosecution of them, such statements obviously did not prejudice the Hamilton County Criminal Court Judge—indeed, that judge dismissed the criminal charges against them. And, no jury was ever prejudiced or inflamed by Pinkston's statements because the case never reached a jury. In other words, Pinkston's public statements had no effect on the *actual prosecution* of the case or the outcome of that prosecution.

Consequently, to the extent Plaintiffs are asserting a malicious prosecution claim arising from Pinkston's public statements to the press and public, such claim will be dismissed for failure to state a claim upon which relief can be granted.

**c)** **Montgomery's, Nayadley's and Jarvis' Fourteenth Amendment Claims Against Pinkston for Deprivation of a Property Interest Without Due Process of Law**

Employing a very liberal interpretation of the Amended Complaint, it appears to the Court that Montgomery, Nayadley, and Jarvis are attempting to assert a claim against Pinkston under the Fourteenth Amendment for a deprivation of a property interest without due process of law. Plaintiffs allege Pinkston violated their due process rights by making false statements about them orally and in writing, thereby causing HCDE and Superintendent Smith to take adverse employment actions against them.

The Fourteenth Amendment prohibits state actors from depriving persons of life, liberty, or property without due process of law. *Crosby v. Univ. of Kentucky*, 863 F.3d 545, 552 (6th Cir. 2017), *cert. denied* 138 S. Ct. 741 (2018); *Quinn v. Shirey,* 293 F.3d 315, 319 (6th Cir. 2002). To establish a procedural due process claim for deprivation of property under the Fourteenth Amendment, a plaintiff must establish that: (1) he possessed a property interest; (2) the defendant deprived him of that property interest; and (3) the defendant, a state actor, did not give the plaintiff adequate procedural rights prior to the deprivation. *Albrecht v. Treon*, 617 F.3d 890, 894 (6th Cir. 2010); *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006); *Hines v. Town of Vonore*, 912 F. Supp. 2d 628, 643 (E.D. Tenn. 2012) (Varlan, J.). The Court will assume, for purposes of this argument, that Plaintiffs did have a property interest in their employment with HCDE.

The Court finds Plaintiffs have not established the second element of this claim  (*i.e.*, the defendant deprived plaintiff of the property interest). While Plaintiffs may have experienced the deprivation of a property interest, Pinkston was not the person responsible for depriving them of that interest. Plaintiffs allege that Pinkston's statements influenced HCDE's decisions, but Pinkston

was not Plaintiffs' employer and was not in a position to suspend, transfer, demote, or "de facto terminate" Plaintiffs.

In an effort to establish a controlling nexus between Pinkston and HCDE, Plaintiffs allege that Pinkston acted "in concert" with HCDE and Smith in their decision to suspend Plaintiffs. However, this statement is merely conclusory. The Amended Complaint provides no facts to establish that Pinkston had authority to make or influence HCDE's employment decisions relating to Plaintiffs—whether those decisions related to suspension, discipline, demotion, transfer, termination, or a pre-decision notice and opportunity to be heard.

Plaintiffs have failed to state a plausible claim against Pinkston for a deprivation of a property interest in violation of the Fourteenth Amendment. Consequently, this claim will be dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6). It is unnecessary to address the other bases for Pinkston's motion to dismiss this claim.

> ### d)  Montgomery's, Nayadley's, and Jarvis' Fourteenth Amendment Due Process Claims Against Pinkston for Deprivation of a Liberty Interest Without Due Process of Law

Again, employing a very liberal interpretation of the Amended Complaint, it appears that Plaintiffs are alleging a loss of a liberty interest without due process of law in violation of the Fourteenth Amendment. Plaintiffs allege Pinkston published false statements about them— damaging their reputations and good names—which caused HCDE and Smith to take adverse employment actions against them without due process of law. Plaintiffs also allege that these false statements will prevent them from obtaining future employment.

A person has a liberty interest under the Fourteenth Amendment to one's good name, reputation, honor, and integrity. *Crosby*, 863 F.3d at 555; *Quinn*, 293 F.3d at 319. But defamation of one's good name and reputation is not, by itself, sufficient to invoke Fourteenth Amendment

protections. *Crosby*, 863 F.3d at 555; *Quinn*, 293 F.3d at 319 (citing *Paul v. Davis*, 424 U.S. 693, 711-12 (1976) (holding police distribution of flyer identifying plaintiff as an "active shoplifter"—thereby defaming plaintiff and impairing his ability to secure future employment—did not state a constitutional claim against police chief for deprivation of a liberty interest under the Fourteenth Amendment.)

There is no constitutional claim for simple defamation. *See Paul v. Davis*, 424 U.S. 693 (1976); *Quinn*, 293 F.3d at 320. Rather, an additional requirement must be met, *to wit*, damage to reputation must be accompanied by the contemporaneous alteration of a right or status previously recognized under state law. *Crosby*, 863 F.3d at 555; *Quinn*, 293 F.3d at 319. That additional requirement may be met where an employee alleges termination from employment in connection with damage to one's good name or reputation; however, such a claim has only been recognized when brought against the employer—not a third party.[14] If an "'employee shows that he has been stigmatized by the voluntary, public dissemination of false information in the course of a decision to terminate his employment, due process requires the employer to afford him an opportunity to clear his name.'" *Quinn*, 293 F.3d at 320 (quoting *Chilingirian v. Boris*, 882 F.2d 200, 205 (6th Cir. 1989); *see also Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)). In order to establish that he is entitled to a name-clearing hearing, the plaintiff must show the following five factors:

> First, the stigmatizing statements must be made in conjunction with the plaintiff's termination from employment. . . . Second, a plaintiff [must show] . . . the employer has alleged . . . [more than] merely improper or inadequate performance, incompetence, neglect of duty or malfeasance. . . . Third, the stigmatizing statements or charges must be made public. Fourth, the plaintiff must claim that the charges made against him were false. Lastly, the public dissemination must have been voluntary.

---

[14] *See e.g.*, *Crosby*, 863 F.3d 545 (action brought by professor against university and university officials); *Stringfield v. Graham*, 212 F. App'x 530 (6th Cir. 2007) (per curiam) (action brought by tenured professor against university, Board of Regents, and Dean of Nursing School); *Ludwig v. Bd. of Trs. of Ferris State Univ.*, 123 F.3d 404 (6th Cir. 1997) (coach brought claim against university Board of Trustees); *Burkhart v. Randles*, 764 F.2d 1196 (6th Cir. 1985) (action brought by public employees against employer County Clerk).

*Quinn*, 293 F.3d at 320 (brackets added) (second and third ellipses added) (quoting *Brown v. City of Niota*, 214 F.3d 718, 722–23 (6th Cir. 2000)); *see also Crosby*, 863 F.3d at 555.

If the plaintiff establishes the five factors discussed above, he is then entitled to a name-clearing hearing. *Quinn*, 293 F.3d at 320; *Ludwig*, 123 F.3d at 410. Importantly, it is the denial of the name-clearing hearing, not the alleged defamation, that causes the deprivation of the liberty interest without due process. *Crosby*, 863 F.3d at 555; *Quinn*, 293 F.3d at 320. An employee must request from his employer a name-clearing hearing in order to prevail on a Fourteenth Amendment claim for loss of a liberty interest without due process of law. *Quinn*, 293 F.3d at 321-24; *see also Stringfield v. Graham*, 212 F. App'x 530, 540 (6th Cir. 2007) ("We have consistently held that a failure of the plaintiff to request a name-clearing hearing bars due process claims for violations of a liberty interest.") A plaintiff's failure to *specifically allege in his complaint* that he requested a name-clearing hearing which his employer denied will result in dismissal of that claim. *Quinn*, 293 F.3d at 324.

The Court has found no case in the Sixth Circuit in which an employee brought a Fourth Amendment due process claim for damage to one's good name and reputation accompanied with loss of current employment where the employee brought that claim against someone other than the *employer*. Again, the Amended Complaint is devoid of allegations that Pinkston had authority to make employment decisions concerning Montgomery, Nayadley, or Jarvis—or that Pinkston could have provided them a name-clearing hearing if one had been requested. The Amended Complaint is also devoid of allegations that Plaintiffs *actually asked* Pinkston for a name-clearing hearing and that Pinkston denied such a request.

For those reasons, the Court concludes Plaintiffs have not stated a claim against Pinkston for deprivation of a liberty interest without due process based on stigmatization of their good

names in connection with HCDE's and Smith's adverse employment decisions. Consequently, this claim will be dismissed with prejudice. The Court finds it unnecessary to address the other bases raised by Pinkston to dismiss this claim.

Furthermore, to the extent that any Plaintiffs attempt to assert a procedural due process claim for loss of a liberty interest in connection with the loss of *future* job opportunities, that claim also fails. Stigmatization of one's reputation in connection with employment termination must be based on a contemporaneous job loss, not the loss of future employment opportunities. *Siegert v. Gilley*, 500 U.S. 226, 233-34 (1991) (finding future employment opportunities were not a protected liberty interest under the Fourteenth Amendment in a claim brought by a plaintiff alleging damage to reputation by his former employer); *see also Mertik v. Blalock*, 983 F.2d 1353, 1262-63 (6th Cir. 1993) (interpreting *Siegert* to hold that "a stigma to reputation that affects only future employment opportunities does not give rise to a protected liberty interest.") The Court will also dismiss this claim with prejudice.

### e)	Other Claims Brought Against Pinkston

In their response to Pinkston's Motion to Dismiss, Plaintiffs argue that Pinkston deprived them of equal protection in violation of their Fourteenth Amendment rights. [Pls.' Resp. at 18, Doc. 146]. The Amended Complaint makes no reference to an "equal protection" claim. It simply was not pled. Plaintiffs did not raise a constitutional claim of deprivation of equal protection against Pinkston in the Amended Complaint, and they cannot do so in their response to the motion to dismiss.

The Amended Complaint alleges several state law claims against Pinkston, *to wit*, negligence, false arrest and false imprisonment, malicious prosecution, abuse of process, defamation, negligent infliction of emotional distress, intentional infliction of emotional distress,

and selective prosecution. Plaintiffs Bonita Montgomery, Janet Nayadley, and Amelia Jarvis have also brought claims under state law for loss of consortium. The Court declines to retain supplemental jurisdiction over these state law claims and will dismiss them without prejudice.

## V.    Conclusion

For the reasons stated in this Memorandum Opinion, Defendants' motions to dismiss will be granted in that: (1) all federal claims will be dismissed with prejudice; and (2) the Court will decline supplemental jurisdiction of all state law claims and dismiss those claims without prejudice.

Specifically, the Court will **ORDER** that:

1.    The Tennessee Department of Children's Services' Motion to Dismiss [Doc. 135] will be **GRANTED**. The Court will **DISMISS WITH PREJUDICE** the claims brought against TDCS under 42 U.S.C. §§ 1981 and 1983, and the Court will **DISMISS WITHOUT PREJUDICE** all claims brought against TDCS under Tennessee state law.

2.    The Hamilton County District Attorney General's Office's Motion to Dismiss [Doc. 133] will be **GRANTED**. The Court will **DISMISS WITH PREJUDICE** the claims against HCDAGO brought under 42 U.S.C. § 1983, and the Court will **DISMISS WITHOUT PREJUDICE** all claims against HCDAGO brought under Tennessee state law.

3.    The Hamilton County Department of Education and Rick Smith's Motion to Dismiss [Doc. 137] will be **GRANTED**. The Court will **DISMISS WITH PREJUDICE** the claims against HCDE and Smith brought under 42 U.S.C. § 1981, and the Court will **DISMISS WITHOUT PREJUDICE** all claims against HCDE and Smith brought under Tennessee state law.

4.    Hamilton County District Attorney General Pinkston's Motion to Dismiss [Doc. 131] will be **GRANTED**. The Court will **DISMISS WITH PREJUDICE** the claims against Pinkston in his official and individual capacities brought under 42 U.S.C. §§ 1981 and 1983, and the Court will **DISMISS WITHOUT PREJUDICE** all claims against Pinkston brought under Tennessee state law.

**ENTER.**

/s/ *Christopher H. Steger*
UNITED STATES MAGISTRATE JUDGE